# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER L. LASTER, et al.,<br><br>Plaintiff,<br><br>vs.<br><br>T-MOBILE USA, INC., et al.,<br><br>Defendant. | LEAD CASE NO. 05cv1167<br><br>**ORDER**<br><br>**(1) GRANTING DEFENDANTS' INDIVIDUAL SUMMARY JUDGMENT MOTIONS;**<br><br>**(2) DENYING DEFENDANTS' JOINTLY FILED MOTION FOR SUMMARY JUDGMENT; AND**<br><br>**(3) DENYING PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION AS MOOT**<br><br>[Docs. 220-22, 241, 244, 246, 256-57] |

In these consolidated putative class actions, Plaintiffs assert that Defendants – wireless phone companies and other entities involved with the sale of wireless telecommunication services – have engaged in the unfair and deceptive practice of charging consumers sales tax on the full retail value of wireless phones that were advertised as "free" or at substantial discounts, in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et. seq.*, and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et. seq.,* and for which Plaintiffs seek injunctive relief under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770, *et. seq*.

Presently before the Court are eight motions. Plaintiffs Jennifer Laster, Elizabeth Voorhies, and Andrew Thompson have filed motions seeking to certify the class. (Docs. 220-22.) Defendants

Airtouch Cellular, AT&T Mobility LLC ("ATTM"), Go-Wireless, New Cingular Wireless PCS LLC, T-Mobile USA Inc. (T-Mobile), Omnipoint Communications, Inc., Cellco Partnership, and Verizon Wireless, L.L.C. ("Verizon") have filed several summary judgment motions challenging Plaintiffs' standing. (Docs. 241, 246, 256-57.) Defendants also filed a joint motion for summary judgment based upon two California court of appeal decisions, *Loeffler v. Target Corp.,* 173 Cal.App.4th 1229 (2009) and *Yabsley v. Cingular Wireless,* 176 Cal.App.4th 1156 (2009). (Doc. 244.)

On August 28, 2009, the Court heard argument on the motions. Craig McKenzie Nicholas, Dennis James Stewart, Alex M. Tomasevic, and Sarah Weber appeared for Plaintiffs, while Richard E. Drooyan, James C. Grant, Michele A. Powers, John C. Wynne, and Rose Mary Huelskamp appeared for Defendants. For the reasons set forth below, the Court grants Defendants' individual motions for summary judgment on standing grounds. The Court denies without prejudice Defendants' joint motion for summary judgment, and denies Plaintiffs' motions for class certification as moot.

# I.

# BACKGROUND

Defendants are engaged in the business of marketing and selling wireless telecommunications products, including wireless phones, accessories and service. These products often are sold as part of a "bundled" transaction, whereby the consumer receives a free or significantly discounted wireless phone, in exchange for agreeing to a wireless service contract for a specified duration. When Defendants offer the free or substantially discounted phone as part of a bundled transaction, they are required to remit sales taxes to the state based on the full retail value of the phone. Defendants generally collect sales tax reimbursements from consumers on such transactions. Plaintiffs contend this practice is improper because Defendants should not charge sales tax on the full retail value of a phone advertised as "free" or at a substantial discount.

Plaintiff Jennifer Laster purchased a wireless phone and service plan from T-Mobile at one of its retail stores on February 23, 2005. (Second Amended Complaint, "SAC," ¶ 3; Laster Dep., 24:5-15; 47:12-15.) T-Mobile sold Laster her phone for $0.00. (SAC ¶ 3.) Laster paid sales tax reimbursement to T-Mobile in the amount of $28.22 on the transaction. (*Id.*) This charge was exclusive of Laster's monthly service fees. (Laster Dep., Ex. L2.)

On or about August 5, 2004, Plaintiff Andrew Thompson purchased two wireless phones and entered into a service contract in a bundled transaction from Verizon at one of its retail stores. (SAC ¶¶ 23-24.) One of the wireless phones had a sales price of $79.99 and the other, a sales price of $0.00. (Thompson Dep., 78:4-6, 79:24-25; Ex. B.) The stated retail price of each phone was $179.99. (SAC ¶ 4; Thompson Dep., Ex. B.) Thompson paid sales tax reimbursement to Verizon in the amount of $27.90 on the transaction. (SAC ¶ 4.)

On November 14, 2004, Plaintiff Elizabeth Voorhies purchased a wireless phone and case at a Go Wireless retail store in a bundled transaction with wireless service from ATTM. (SAC ¶ 25.) She paid $13 for the phone and case. (*Id.*) The stated retail price of the wireless phone was $119.99. (SAC ¶ 5.) Voorhies paid sales tax reimbursement to Go Wireless in the amount of $10.31. (*Id.*)

## II.

## LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure where there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett,* 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When making its determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## III

## DISCUSSION

Plaintiffs seek certification of their UCL, FAL, and CLRA claims on behalf of the following class: "All persons who purchased a cell phone in California [from Defendants], at a final cost

- 3 -

reflecting state sales tax calculated upon an asserted retail value of the phone which exceeded the advertised price[]." (*E.g.* Thompson Class Cert. Mot., at 1.) Defendants' individual motions for summary judgment contend that Plaintiffs lack constitutional and statutory standing under the UCL, FAL, and CLRA. Defendants' joint motion for summary judgment contends that Plaintiffs' claims are precluded under applicable state law, and as such, fail as a matter of law. The Court resolves Defendants' motions first because a district court should "defer ruling on the class certification until [it determines] whether the purported class representative can state a claim within the asserted class." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 n.6 (9th Cir. 2003).

### A.  *Loeffler & Yabsley* Decisions

After the present motions were fully briefed and argued, the California Supreme Court granted review of *Loeffler*, 173 Cal. App. 4th at 1229, *rev. granted*, 216 P.3d 520, and *Yabsley*, 176 Cal. App. 4th at 1156, *rev. granted*, 2009 Cal. LEXIS 12221 (2009). Thus, the Court declines to address the issues raised in the supplemental briefing, and Defendants' motion for summary judgment based on these decisions is denied without prejudice.

### B.  Article III Standing

Defendants challenge Plaintiffs' standing to sue under the United States Constitution and applicable state law. Article III, § 2 of the Constitution places the case or controversy limit on the federal courts' jurisdiction. "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC) Inc.*, 528 U.S. 167, 179 (2000). In response to a summary judgment motion challenging standing, a plaintiff may not rest on allegations but must demonstrate standing "by affidavit or other evidence . . . which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotations and citations omitted).

Plaintiffs have established Article III standing for their restitution claim. Plaintiffs allege they suffered a pecuniary injury, namely, payment of excess sales tax reimbursements to Defendants. *See*

*Data Processing v. Camp,* 397 U.S. 150, 154 (1970) (showing of pecuniary injury satisfies injury-in-fact requirement). Because Defendants marketed and sold the bundled wireless phones and collected reimbursements from Plaintiffs, the injury is fairly traceable to Defendants. *See Smith v. Block*, 784 F.2d 993, 995 (9th Cir. 1986) ("There must be a link between [the defendants'] conduct and [the plaintiffs'] loss"). Finally, Plaintiffs could be made whole by a court order requiring disgorgement of Defendants' sales tax reimbursements. *See Public Citizen v. DOT*, 316 F.3d 1002, 1016-19 (9th Cir. 2003), *rev'd on other grounds*, 541 U.S. 752 (2004) (redressability prong requires that requested relief likely will redress alleged injury).

As to Plaintiffs declaratory and injunctive relief claims, Plaintiffs must demonstrate that they are "realistically threatened by a repetition of the violation" for the relief to redress their alleged injuries. *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (no standing for injunctive relief where the plaintiff was not realistically threatened by police officer's choke-hold because it was unlikely he would act illegally in the future). Defendants, citing *Cattie v. Wal-Mart Stores, Inc.,* 504 F. Supp. 2d 939 (2007), argue Plaintiffs lack standing to seek such relief as Plaintiffs are now fully aware of Defendants' sales tax practices.

In *Cattie,* the plaintiff alleged that she purchased linens from the defendant's website, and that the linens' thread count was lower than advertised. 504 F. Supp. 2d at 941. The plaintiff sought to enjoin the defendants from "engaging in the false advertising and marketing campaign" described in the plaintiff's complaint, as well as a declaration that the defendants violated the UCL and the FAL. *Id.* at 951. The *Cattie* court found it lacked jurisdiction because it was unclear that prospective relief could redress plaintiff's injury since she was then fully aware of the linens' thread count, and because she failed to allege she would purchase linens from the defendant in the future. *Id.*

The same is true here. Plaintiffs now know Defendants will seek sales tax reimbursement on any bundled wireless phone purchase equal to the full retail price of the phone or phones purchased. Plaintiffs' knowledge precludes them from showing likelihood of future injury. *See Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 808 (2007) (plaintiff who knows defendant's claims are false but nonetheless proceeds has not relied on the truth of defendant's misrepresentations). Therefore, prospective relief will not redress Plaintiffs' alleged injuries. Nor does the unnamed class

members' standing confer jurisdiction. *See Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek.").

Plaintiffs argue it would be nonsensical to deny prospective injunctive relief on these grounds because it would have the effect of "preclud[ing] any claim in federal court under California's consumer protection law to enjoin false advertising because a plaintiff would never have standing." (*E.g.,* Voorhies Opp'n., at 14.) According to Plaintiffs, construing Article III standing in such an "overly-technical and restrictive manner" would frustrate California's interest in "protect[ing] California's consumers from false advertising and other sharp practices." (*Id.* at 14 & n. 5.) However, standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560. Article III defines the limits of federal jurisdiction and "the states have no power directly to enlarge or contract federal jurisdiction." *Duchek v. Jacobi*, 646 F.2d 415, 419 (9th Cir.1981). Although Plaintiffs may have entirely viable state law claims in state court, they are foreclosed from pursuing such relief in federal court absent Article III standing. *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1002 (9th Cir. 2001). Accordingly, Plaintiffs have Article III standing to pursue their UCL and FAL restitution claims, but Plaintiffs' claims for injunctive and declaratory relief, including Plaintiffs' CLRA claims, are dismissed without prejudice for lack of jurisdiction.

### C. Statutory Standing

Defendants also contend Plaintiffs lack statutory standing under the UCL and the FAL. In addition to showing Article III standing, a plaintiff attempting to state a claim for violation of a statute must plead and prove the statute in question grants a right to sue. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004). If a plaintiff satisfies Article III jurisdiction but lacks statutory standing, the plaintiff cannot state a claim upon which relief may be granted. *Id.* Proposition 64, which was approved by California voters on November 2, 2004, enacted new standing requirements for the UCL and FAL. To have standing, as well as to serve as a class representative, a plaintiff must plead and prove that he or she "has suffered injury in fact and has lost money or property as a result of" a defendant's unlawful, unfair, or fraudulent business practices or false advertising. Cal. Bus. & Prof. Code §§ 17203-04 (UCL), 17535 (FAL).

The phrase "as a result of" imposes an actual reliance requirement on plaintiffs. *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) ("*Tobacco II*").[1] In order to show actual reliance, a plaintiff must establish that the defendant's misrepresentation was the immediate cause of the plaintiff's injury-producing conduct. *Id.* (quoting *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1110-11 (1993)). A plaintiff can make this showing by establishing that in the absence of the misrepresentation, the plaintiff "in all reasonable probability would not have engaged in the injury-producing conduct." *Id*.

A plaintiff does not need to show that a defendant's misrepresentation was the only cause of the injury-producing conduct; rather, the plaintiff need only show that the misrepresentation was a substantial factor in influencing his decision. Where the misrepresentation is material, "a presumption, or at least an inference, of reliance arises." *Id.* Further, a plaintiff need not prove that he or she relied on specific misrepresentations or false statements where "those misrepresentations and false statements were part of an extensive and long-term advertising campaign." *Id*. at 328.

### 1. Laster

Laster purchased a wireless phone and service plan from a T-Mobile store on February 23, 2005. (Laster Dep., 24:5-15; 47:12-15.) She went into the store interested in purchasing a particular make and model that she had seen advertised by T-Mobile on the internet. (*Id.* at 31:15-20, 34:9-10, 35:1-3.) The web offer for the particular phone indicated that the advertised price was exclusive to

---

[1] Plaintiffs argue that *Tobacco II's* actual reliance requirement does not apply under the UCL's "unlawful" or "unfair" prongs. Plaintiffs base their "unlawful" UCL claim on an alleged violation of the Federal Trade Commission's Guide Concerning Use of the Word "Free" and Similar Representations, 16 C.F.R. § 251.1, which regulates use of the word "free" in advertisements to ensure consumers will not be misled or deceived. However, Defendants correctly note that the FTC's guide does not have the force of law, so it cannot be "borrowed" under the UCL. *See* 16 C.F.R. § 240.1 (the FTC's guides "do not have the force of law"); *see also Pocino v. Jostens, Inc.,* 2006 Cal. App. Unpub. LEXIS 3852, *14-15 (unlawful prong must show violation of FTC statute, not guide). Further, even assuming the guide was cloaked with force of law, Plaintiffs' argument is unpersuasive. While *Tobacco II* limited the actual reliance requirement to a subset of UCL claims, it specifically applies to actions "based on a fraud theory involving false advertising and misrepresentations to consumers." 46 Cal. 4th at 326 n.17. There is no principled reason to distinguish an "unlawful" UCL claim based on a federal false advertising guide from a "fraudulent" UCL claim based on state false advertising law. Likewise, assuming that the "unfair" prong of the UCL can be used to remedy false advertising, there is no reason to conclude that an "unfair" UCL claim predicated upon false advertising and misrepresentation would not be subject to *Tobacco II's* actual reliance requirement. *See In re Firearm Cases,* 126 Cal. App. 4th 959, 981 (2005) (Prop. 64 causation is an element of UCL claims under the "unfair" prong); *People v. McKale,* 25 Cal. 3d 626, 635 (1979) (the essential test – "whether the public is likely to be deceived" – is identical under the "unfair" and "fraudulent" prongs). Consequently, Plaintiffs must plead and prove actual reliance on Defendants' alleged misrepresentations. *Tobacco II*, 46 Cal.4th at 326-27 & n. 17.

1    online or telephone purchases. (Green Decl., Ex. L6.) The web offer also indicated that "Tax and
2    shipping charges (if applicable) are extra." (*Id.*) Laster testified that she does not recall reading either
3    of these provisions in the advertisement. (Laster Dep. at 37:18-38:17.) Instead, Laster testified she
4    was more concerned with comparing individual handsets to one another than "look[ing] at all the
5    details about the various offers." (*Id.* at 45:25-46:6.) Laster asked Rhiannon Green, the acting
6    manager for the T-Mobile store, whether she could buy the phone in the store on the same terms as in
7    the offer. (*Id.* at 37:3-17.) Even though the web offer was limited to telephone or online purchases,
8    Green agreed to match the web offer's price. (Green Decl. at ¶3.) Green accessed the web offer
9    online, printed it out, and attached it to Laster's sale records. (*Id.*) Laster testified that $28.22 was an
10   "acceptable price" for the phone and the service. (Laster Dep. at 50:23-51:2.)

11   Given these undisputed facts, Laster is unable to show actual reliance upon T-Mobile's
12   advertising. This Court previously concluded that Plaintiffs sufficiently alleged injury-in-fact based
13   on "bait-and-switch" advertising: "[putative class members] were lured in with advertisements for free
14   or deeply discounted phones, yet once in the store, they were charged sales tax based on the full retail
15   value of the phone." *Laster,* 407 F. Supp. 2d at 1194. Following discovery, however, it appears that
16   Laster was neither baited nor switched by T-Mobile's advertising. The specific web offer was limited
17   to online and telephonic sales and indicated that taxes were "extra." T-Mobile could not have lured
18   Laster into its store to defraud her because the offer, on its own terms, did not apply to in-store sales
19   and indicated that consumers would have to pay taxes in addition to the advertised sale price. Laster's
20   attempt to rely on a general false advertising campaign is unpersuasive in light of the specific ad
21   involved in her transaction.

22   Moreover, because the T-Mobile store manager "matched' the web-only promotion, Laster did
23   not rely upon the advertisement. *Buckland,* 155 Cal. App. 4th at 808 (quoting Restatement (Second)
24   of Torts § 548) ("recipient of a misrepresentation must [detrimentally] rely upon the truth of the
25   misrepresentation itself"). Instead, Laster made an offer to T-Mobile to buy the product under certain
26   terms, and thus she received the benefit of her bargain. *See Peterson v. Cellco Partnership,* 164 Cal.
27   App. 4th 1583, 1592 (2008) (putative class members did not suffer actual economic injury because
28   they received the benefit of their bargain). Because Laster fails to raise a genuine issue of material fact

concerning her right to sue, T-Mobile is entitled to summary judgment on this ground.

### 2. *Thompson*

On August 5, 2004, Thompson purchased two wireless phones from a Verizon Wireless store. (Ephraim Decl. Ex. B.) Thompson wanted two phones: one for himself, and one for his wife who was then eight months pregnant. (Thompson Dep., 49:4-8.) He chose Verizon because he had seen advertisements for "buy one, get one free" deals on phones, but he does not remember any specific advertisements. (*Id*. at 67:6-9; 75:13-17). He told the Verizon sales representative that he wanted the cheapest phone available. (*Id*. at 71:8-10; 21-24.)

Thompson's sales receipt discloses that he purchased two phones, each with a retail price of $179.99. (Ephraim Decl, Ex. B.) He was charged $79.99 for one phone and $0.00 for the other. (*Id*.) He was charged $27.90 for "tax on phones." (*Id*.) Thompson did not realize at the time of purchase that he was paying sales tax on the free phone. (Thompson Dep. at 85:8-10.) However, he admitted that he probably would have purchased the phones even if he had learned of the sales tax while in the store. (*Id*. at 93:21-25.)

Verizon argues Thompson's admission that he "probably" would have bought the phone anyway negates statutory standing because Thompson cannot show that the advertising was the immediate cause of his injury. Thompson argues that the admission does not defeat his standing because Verizon's representations of "buy one, get one free" were a substantial factor in influencing his decision. He also argues that he is entitled to a presumption of reliance.

Although a plaintiff may show that a misrepresentation is a substantial factor in influencing his or her decision, rather than the sole cause, a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct. *Tobacco II*, 46 Cal. 4th at 326. Thus, a plaintiff must show that "in all reasonable probability [he or she] would not have engaged in the injury-producing conduct." *Id*. Here, the undisputed evidence shows that in all reasonable probability, Thompson would have purchased the phones even if he had known about the sales tax.[2] Since

---

[2] Thompson's attempt to clarify his statement fails. "A party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991). This rule has been extended to include amendments to depositions under Federal Rule of Civil Procedure 30(e). *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1225–26 (9th Cir. 2005) ("While the language of FRCP 30(e) permits corrections 'in form

Thompson cannot show that the misrepresentation attributed to Verizon was the immediate cause of his injury, his claims fail.

Thompson's admission also rebuts the presumption of reliance. If Thompson would have purchased the phone even with knowledge that sales tax was being assessed on full retail value, Verizon's allegedly misleading advertisements would not have been material to him in any event. Moreover, Thompson did not question the charge at the time of the transaction, and he made no attempt to return the phone once he discovered the charge for sales tax.

### 3. *Voorhies*

On November 14, 2004, Voorhies purchased a Nokia phone and leather phone case from a Go-Wireless store. (Tomasevic Decl, Ex. F.) Similar to Thompson, Voorhies cannot remember any specific advertisement on the part of ATTM or Go-Wireless that she relied upon, pointing instead to Defendants' long-running campaign of free or discounted phones: "wherever you look, there's [ATTM], free phone, free phone. And that to me is an advertisement campaign, whether its on TV or in the newspaper or in magazines or radios, I mean it's just free phone, [ATTM]." (Voorhies Dep., 103:16-20.) The phone had a retail value of $119.99. (Tomasevic Decl, Ex. F.) She was charged $0.00 for the phone, $13.00 for the leather case, and $10.31 in tax, for a total purchase price of $23.31. (*Id*.) At the time of purchase, Voorhies believed $23.31 "sounded reasonable," but she did not review the receipt or realize she was paying sales tax on the phone. (Voorhies Dep., 90:4-16.)

The 2004 transaction was not Voorhies' first cell phone purchase, nor her last. In 2000, she entered into a wireless service contract with Pacific Bell (the predecessor to Cingular and ATTM), at which time she purchased a Nokia phone for $149.00. (Tomasevic Decl., Ex. C.) She received a $149.00 instant rebate on the phone and paid $11.55 in sales tax. (*Id*.) She signed another two-year contract with ATTM in 2002. (Voorhies Dep., 149:3-150:2.) Since filing the instant lawsuit,

---

or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment."). Under *Hambleton,* changes to deposition testimony are disregarded for summary judgment purposes unless a satisfactory explanation is given by the witness. *Id.* at 1225. A relevant consideration is the timing of corrections, *see id.,* and, as in *Hambleton,* Thompson completed his errata after the summary judgment motion was filed. (*Compare* Weber Decl. Ex. A, at A-31b *with* Doc. 246.) Because Thompson fails to explain this correction other than to state "clarification" on his errata sheet, the Court disregards it.

1  Voorhies has entered into three additional bundled transactions with ATTM.  Voorhies "estimate[d]
2  that she purchased or upgraded her bundled phone products and/or services approximately every two
3  years beginning around the year 2000, and that each transaction involved the sale of phones advertised
4  as 'free.'"  (Wynne Decl., Ex. F, p.7-8.)

### a.    ATTM

ATTM argues that Voorhies lacks standing because, prior to the transaction at issue, she had purchased two other "free" phones and paid sales tax on the full retail value.  Therefore, according to ATTM, Voorhies did not reasonably rely on any alleged misrepresentations.[3]  Voorhies argues that ATTM's free ad campaign was a substantial factor in her decision to purchase the phone and that she is entitled to a presumption of reliance.

Voorhies' claim that she was deceived by a free phone ad campaign is belied by her previous transactions with ATTM.  Indeed, Voorhies was not lured into the Go-Wireless store in 2004 because of a "free" phone advertisement.  In fact, she does not remember if she looked at any particular phones prior to entering the store.  (Voorhies Dep., 62:19-25; 65:2-10.)  Rather, she went into the store because her contract was up and she wanted a new phone.  (Voorhies Dep., 62:4-5.)  She admitted that her previous transactions influenced her knowledge in 2004.  (*Id*. at 124:8-14.)  She knew that with "Cingular, under contract, you start a new one, you get a free phone."  (*Id*.)

The undisputed evidence shows that Voorhies had a history of renewing her cell phone contract every two years and getting a new phone.  She did not actually rely on any advertising campaign, as she relied on her prior history and experiences with ATTM, in which she paid sales tax on the retail value of the phones she received.  (*See* Tomasevic Decl., Ex. C.)  This evidence also rebuts the presumption of reliance, because she had previously paid sales tax on a "free" phone and was prepared to – and in fact did – do so again.  Voorhies, therefore, lacks standing to pursue her claims.

///

---

[3] ATTM's reference to "reasonable reliance," the standard associated with common law fraud, is misplaced.  In *Tobacco II*, the California Supreme Court set out an "actual reliance" standard, noting that the fraudulent prong of the UCL is "understood to be distinct from common law fraud."  46 Cal. 4th at 312, 326.  Both parties addressed *Tobacco II* in their briefs, and Voorhies herself premised her arguments on an actual reliance standard.  Since Voorhies carries the burden of proof to demonstrate standing to sue, the Court applies the actual reliance standard to the present facts.

b.     Go-Wireless

Go-Wireless argues that Voorhies could not have relied upon its advertising. It also argues that it cannot be held vicariously liable under the UCL for ATTM's advertising, citing *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 809 (9th Cir. 2007) and *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002). The Court agrees. Go-Wireless marketed and sold ATTM cellular service in its retail outlets. (Fletcher Decl., ¶4.) ATTM advertised its services through various media outlets, and Go-Wireless had no control over that advertising, nor did it participate in the creation of ATTM's general marketing materials. (*Id.* at ¶8.) Voorhies testified in deposition that at the time of the 2004 Go-Wireless transaction, she was unaware that Go-Wireless existed, could not recall any of its advertisements, did not look for a Go-Wireless store, and was unaware that she was shopping in a Go-Wireless store. (Voorhies Dep., 61:2-4; 62:1-18; 216:7-11; 220:25-221:3; 237:5-6.) While in the store, Voorhies does not recall seeing any signage concerning applicable sales taxes. (*Id.* at 237:7-10.) Voorhies was not exposed to any misrepresentations by Go-Wireless that induced her purchase. As such, she cannot show actual reliance. Moreover, Go-Wireless cannot be held liable for ATTM's advertising: "unfair practices claim under section 17200 cannot be predicated on vicarious liability. . . . A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate section 17200 or 17500." *Perfect 10*, 494 F.3d at 809 (citing *Emery*, 95 Cal. App. 4th at 960). As ATTM's agent, Go-Wireless had no control over ATTM's advertising or its content, and did not participate in any joint action regarding the same. (Fletcher Decl., ¶8.)

Nevertheless, Voorhies contends that Go-Wireless is liable for unlawful, unfair, and fraudulent practices. She argues Go-Wireless misrepresented that her phone would be free, because its store personnel failed to disclose the consumer obligation to reimburse sales tax based upon full retail value, after she "walked in [to the store] saying, 'Hi, I'm here to get my free phone.'" (Voorhies Dep., 220:11-13.) Voorhies further argues that Go-Wireless is liable for ATTM's advertising because it directly profited from these acts, citing *Troyk v. Farmers Group, Inc.,* 171 Cal. App. 4th 1305 (2009). In *Troyk,* however, the court held a managing agent liable for an insurer's violations of the insurance code because it "was directly involved in the drafting and execution of the class members' policies."

*Id.* at 1337. Accordingly, *Troyk* is in harmony with *Perfect 10* and *Emery*, where the courts held that a defendant is liable for participation in, and "unbridled control over," proscribed business practices. Because Go-Wireless did not control or participate in the creation of ATTM's advertising, it cannot be held liable for ATTM's actions. Accordingly, Go Wireless' motion for summary judgment is granted.

### D. Request for Continuance.

Plaintiffs seek to continue the pending summary judgment motions pursuant to Rule 56(f). Under Rule 56(f), a trial court may order a continuance if the party opposing the motion submits affidavits showing that it cannot present facts necessary to justify its claims in the absence of a continuance. *Family Home and Finance Center, Inc. v. Federal Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Plaintiffs argue they need more discovery to respond to Defendants' arguments because discovery was limited to issues of class certification, and, as a result, they were unable to investigate the merits of their claims. (*See e.g.,* Thompson Opp'n., Tomasevic Decl. ¶ 10.) Plaintiffs, however, must plead and prove standing at all stages of litigation. Plaintiffs themselves are also in the best position to know the facts relevant to the standing issues discussed above. Accordingly, Plaintiffs' Rule 56(f) requests are denied.[4]

### IV.
### CONCLUSION

For these reasons, Defendants' individual motions for summary judgment are granted. Defendants' joint motion for summary judgment is denied without prejudice, and Plaintiffs' motions for class certification are denied as moot. The Clerk of the Court is instructed to enter judgment for Defendants.

**IT IS SO ORDERED.**

DATED: December 14, 2009

HON. DANA M. SABRAW
United States District Judge

---

[4] Because the Court finds that summary judgment is appropriate on statutory standing grounds, it declines to reach the balance of Defendants' arguments. The Court also denies as moot Plaintiffs' class certification motions because the representative Plaintiffs are unable to state a claim.